IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| NORBERT ERYSTHEE | : | CIVIL ACTION |
| --- | --- | --- |
| | : | |
| v. | : | No. 15-58 |
| | : | |
| TROPICAL SHIPPING AND | : | |
| CONSTRUCTION COMPANY, LTD., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                **March 27, 2018**

Plaintiff Norbert Erysthee brings this action against his former employer, Tropical Shipping and Construction Company, Ltd., and his former manager, Nisha Aubain, arising out of Tropical's termination of his employment. In his original Complaint, Erysthee asserts claims for breach of contract and breach of implied covenant of good faith and fair dealing against Tropical, a claim for tortious interference with contractual relations against Aubain, and claims for intentional infliction of emotional distress and negligent infliction of emotional distress against Tropical and Aubain.[1] Asserting no employment contract exists between Erysthee and Tropical, Tropical moves for summary judgment on the breach of contract and implied covenant claims, and Tropical and Aubain seek dismissal of Erysthee's remaining claims for failure to state a claim upon which relief can be granted. Erysthee opposes Defendants' motion to dismiss and for summary judgment, and also seeks leave to file an amended complaint. For the reasons set forth below, Erysthee's motion for leave to amend will be granted in part and denied in part, and the Court will consider Defendants' arguments for summary judgment and dismissal as to Erysthee's proposed amended complaint (Amended Complaint). As to the claims in the Amended

---

[1] Although Erysthee's original complaint also included a claim for wrongful discharge against Tropical, he has since withdrawn that claim.

Complaint, Defendants' motion to dismiss will be granted in part and denied in part, and Tropical's motion for summary judgment will be denied as premature.

**BACKGROUND**[2]

Erysthee was hired by Tropical as a Maintenance Manager on June 17, 2013. *See* Defs.' Statement of Undisputed Facts ¶ 1. He left his family in Florida and relocated to St. Thomas, Virgin Islands as a condition of his employment. Am. Compl. ¶ 17, 20. Prior to Erysthee's start date, he signed an offer of employment letter dated May 31, 2013, which included, among other provisions, information about salary, benefits, relocation, and confidentiality. Defs.' Statement of Undisputed Facts Ex. A. The offer letter contained the following language:

> This offer of employment is not to be construed as a contract of employment. You are employed at-will, to the extent permissible under U.S. Virgin Islands law, meaning that as an employee, you are completely free to leave the Company whenever you choose, and for any reason. Conversely, Tropical maintains the same right to end the employment relationship.

*Id.* at 3. When Erysthee began employment with Tropical, Tropical provided him with several employment documents, including an Employee Handbook, which set forth the terms and conditions of his employment as well as his duties, responsibilities, and obligations as an employee with Tropical. Am. Compl. ¶ 21. This Handbook also included the disclaiming language that it was "not to be construed as a contract of employment" and that Tropical reserved the right to revise, supplement, or rescind any of the Handbook's rules, in its sole discretion. Defs.' Opp'n to Pl.'s Mot. for Leave to Amend Ex. 2, at 2.

---

[2] Because, as explained below, Erysthee's motion for leave to amend will be granted, the following facts are drawn from the allegations contained in Erysthee's Amended Complaint and the evidence in the summary judgment record, all of which the Court construes in the light most favorable to Erysthee, drawing all reasonable inferences in his favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Over the course of his employment with Tropical, Erysthee reported to Tropical's Island Manager, Nisha Aubain. Am. Compl. ¶ 24. Erysthee and Aubain initially maintained a congenial relationship, and Aubain accepted Erysthee's suggestions regarding the equipment maintenance department. *Id*. ¶¶ 31–32. Aubain and members of upper management commended Erysthee on his performance, dedication, and hard work, and in October 2013, Aubain informed Erysthee that Tropical was considering him for a promotion to Terminal Manager. *Id*. ¶¶ 33–34. Erysthee expressed interest in the position, was given a job description and keys to the Terminal Manager's office, and started informally assuming the role. *See id.* ¶¶ 35, 37–38. As part of this role, Erysthee reviewed surveillance videos, attended Port Security meetings, and performed other duties incidental to the Terminal Manager position. *Id*. ¶ 38. In early November 2013, Erysthee negotiated a new salary with upper management and was told his promotion would be effective January 1, 2014, after approval from one more vice-president. *Id*. ¶¶ 42–43.

In October 2013, Erysthee discovered irregularities in the fuel consumption of Tropical's generators. *Id*. ¶ 45. His investigation into the matter revealed that a driver/mechanic for a company owned by Aubain's aunt was involved in stealing the fuel, and he reported his findings to Aubain and Tropical's headquarters. *Id*. ¶¶ 44, 49–50. Then, in December 2013, he discovered Tropical's equipment was being sabotaged by one of Aubain's relatives who worked as a heavy equipment technician. *Id*. ¶ 52. Erysthee attempted to have the relative terminated from Tropical, but Aubain ensured that her relative received only a three-day suspension. *Id*. ¶ 56. After these two incidents, Aubain began to show dislike and personal animosity toward Erysthee. *Id*. ¶ 57. For example, Aubain sent an email to Erysthee—on which management was copied—"falsely accusing him of having a bad attitude," *id*. ¶ 62, and took away the company vehicle he had been operating, which forced Erysthee to secure another vehicle to complete his employment

3

obligations, *id*. ¶ 63. Co-workers commented to Erysthee that Aubain "had it out for him," and Aubain complained excessively about Erysthee, *id*. ¶¶ 61, 65. However, other members of upper management complimented Erysthee, and told him to keep up the work. *Id*. ¶ 71. As a result of the accolades, representations contained in employment documents, and upcoming increase in salary, Erysthee flew his wife to St. Thomas from Florida to visit schools their children could attend once the whole family relocated. *Id*. ¶¶ 74–75. However, on February 25, 2014, the day Erysthee's wife arrived to visit schools, he was informed that he was terminated effective March 1, 2014. *Id*. ¶¶ 76–77.

**DISCUSSION**

Relying on the language in the offer letter signed by Erysthee disclaiming creation of an employment contract and pointing to the lack of any evidence regarding any other employment agreement, Tropical seeks summary judgment as to Erysthee's breach of contract and breach of implied covenant of good faith and fair dealing claims (Counts I and II of the original Complaint, respectively), asserting that there was never a contractual relationship between it and Erysthee. Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation omitted).

Aubain seeks dismissal of Erysthee's claim for tortious interference with contractual relations (Count IV of Complaint), and Tropical and Aubain both seek dismissal of Erysthee's claims for intentional infliction of emotional distress and negligent infliction of emotional distress (Counts V and VI, respectively, of the original Complaint) on the ground that such claims fail to state a claim upon which relief can be granted. To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210–11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

Erysthee argues summary judgment is premature, asserts he has pled sufficient facts to support his claims, and seeks leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a). Rule 15 "embodies a liberal approach to pleading," and leave to amend "must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see also* Fed. R. Civ. P. 15(a)(2) (directing that courts "should freely give leave [to amend] when justice so requires"). A district court has discretion to deny a request to amend, however, "if it is apparent from the record that (1) the

moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

In his motion for leave to amend, Erysthee seeks to correct allegations regarding Tropical's principal place of business, withdraw his claim for wrongful discharge, and limit his negligent infliction of emotional distress claim to Aubain—amendments Tropical and Aubain do not oppose. Additionally, he seeks to amend the Complaint to more clearly set forth the factual allegations that support his claims. Tropical and Aubain oppose these amendments arguing that the delay in bringing them is undue, the amendments will prejudice them, and that the amendments would be futile because the Amended Complaint still fails to plead viable claims.

The Court will grant Erysthee's motion for leave to amend as to the breach of contract and breach of good faith and fair dealing claims against Tropical and tortious interference with contractual relations claim against Aubain in her individual capacity, and will consider Tropical and Aubain's arguments for dismissal and summary judgment as to Erysthee's Amended Complaint. Erysthee is not adding new claims but providing additional factual bases for his asserted claims, and his motion for leave to amend was his first request to amend his Complaint. Additionally, Tropical and Aubain filed their motion seeking summary judgment and dismissal less than two months after the Complaint was filed, and no discovery has taken place. Thus, the Court finds Tropical and Aubain's first two arguments against granting leave to amend—undue delay and prejudice—unpersuasive. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (noting "delay alone is an insufficient ground to deny leave to amend" and explaining unfair prejudice requires an inquiry into whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories

(citations omitted)). For reasons explained below, the Court finds that allowing amendment of the breach of contract, breach of good faith and fair dealing, and tortious interference with contractual relations claims (Counts I, II, and IV, respectively, of the original Complaint) would not be futile; however, the Court agrees with Tropical that allowing Erysthee to amend his claims for intentional infliction of emotional distress and negligent infliction of emotional distress (Counts V and VI, respectively, of the original Complaint) would be futile.

To plead a viable claim for intentional infliction of emotional distress, a "plaintiff must allege that the defendant, by [] extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." *Nino v. Jewelry Exch., Inc.*, No. 2006-39, 2008 WL 5272520, at *1 (D.V.I. Dec. 16, 2008) (citation omitted). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society." *Id*. (internal quotation marks and citation omitted). Here, the basis for Erysthee's claim is that Tropical and Aubain engaged in allegedly retaliatory conduct toward Erysthee in the workplace. These allegations, including Aubain's email to Erysthee—on which management was copied—falsely accusing him of having a bad attitude, Aubain's taking away of his company vehicle, and her excessive complaints about him, taken as true, fail to meet the extremely high standard of a claim for intentional infliction of emotional distress. *See, e.g.*, *Smith v. V.I. Port Auth.*, No. 2002-227, 2005 WL 15459, at *13 (D.V.I. Jan. 2, 2005) (dismissing an intentional infliction of emotional distress claim brought by employee who complained about "not receiving notice of important meetings, having to fill out excessive paperwork to order office supplies, . . . being allowed to travel to only one conference a year, being given insufficient and biased process in conjunction with her suspensions, and being treated 'worse than a criminal'" (citation omitted)).

A claim for negligent infliction of emotional distress must satisfy the elements of a negligence claim: "a plaintiff must demonstrate the existence of a duty, a breach of that duty, direct and proximate causation, and damages." *Donastorg v. Daily News Publ'g Co.*, No. 2002-117, 2015 WL 5399263, at *54 (V.I. Aug. 19, 2015). Like his intentional infliction of emotional distress claim, Erysthee's negligent infliction claim stems from how Aubain—Erysthee's supervisor—treated him, but he fails to offer any legal authority for the proposition that a supervisor owes her subordinate a duty in tort to exercise reasonable care in the supervision or termination of that employee. The bare assertion that Aubain owed a duty to Erysthee is insufficient to support Erysthee's negligent infliction of emotional distress claim as a matter of law. *See, e.g.*, *Farm Credit Servs. of Am., FCLA v. Haun*, 734 F.3d 800, 805 (8th Cir. 2013) (affirming the Rule 12(b)(6) dismissal of a negligence claim and explaining that "[plaintiffs] must provide something beyond their 'naked assertion' that [a defendant] undertook a . . . legal duty" (quoting *Twombly*, 550 U.S. at 557)).

With respect to Aubain's motion to dismiss Erysthee's claim for tortious interference with contractual relations (Count III of the Amended Complaint), Aubain argues this claim must be dismissed because there are no facts alleged to support the existence of a contract. Additionally, she argues that because all of her alleged conduct at issue was undertaken in her official capacity and within the scope of her employment, she is considered a single entity with Tropical and thus cannot tortiously interfere with Erysthee's contract with the company. Finally, she contends Erysthee does not allege any facts to establish that she engaged in intentional, improper conduct to interfere with Erysthee's alleged contract with Tropical.

The Court finds that Erysthee's claim against Aubain in her individual capacity survives the motion to dismiss. However, to the extent that Erysthee asserts this claim against Aubain in

her official capacity as Island Manager and an agent of Tropical, it cannot survive because Aubain cannot interfere with a contract to which Tropical is a party. *See Sorber v. Glacial Energy VI, LLC*, No. 10-588, 2013 WL 945461, at *6 (V.I. Mar. 7, 2013) ("[A] corporation or its agents cannot tortuously [sic] interfere with its own contract."). To state a claim for tortious interference with contractual relations, the plaintiff must allege:

> a contractual relationship between plaintiff and a third party; (2) the defendant knew about the contract; (3) the defendant intentionally and improperly interfered with the contract; (4) the interference was the proximate cause of one party to the contract failing to perform; (5) the defendant intended to harm the plaintiff by interfering with the contract; and (6) the non-performance resulted in harm to the plaintiff.

*Bethea v. Merchants Commercial Bank*, No. 11-51, 2014 WL 4413045, at *17 (D.V.I. Sept. 8, 2014). A tortious interference claim can proceed in the context of at-will employment. *See Sorber*, 2013 WL 6184064, at *6 (citation omitted). Here, in his Amended Complaint, Erysthee alleges that he received several employment documents when he began employment with Tropical. He also alleges that, several months later, Tropical provided him with a job description for a Terminal Manager position and keys to the Terminal Manager's office, he took on additional duties as a Terminal Manager, and was told his promotion would be effective January 1, 2014, pending approval from one more vice-president. These facts, viewed in the light most favorable to Erysthee, sufficiently allege the existence of an oral or written employment contract. Erysthee has also alleged facts that after he uncovered and reported theft of fuel and sabotage of Tropical's equipment—wrongdoing in which Aubain's relatives were implicated—Aubain's conduct toward him changed and he was terminated from employment shortly thereafter. Taking these facts as true in the light most favorable to Erysthee, they suggest Aubain's conduct may have been motivated by personal animus, and that she may have acted outside the scope of her authority and engaged in intentional, improper conduct.

9

Tropical has also moved for summary judgment on Erysthee's breach of contract and breach of implied covenant of good faith and fair dealing claims (Counts I and II, respectively, of the Amended Complaint), primarily asserting Erysthee did not have an employment contract with the company. Tropical cites to the offer letter, signed by Erysthee, containing language that it is not to be construed as a contract of employment. It also submits a declaration by Alfredo Fernandez, Tropical's International Human Resources Manager, authenticating the offer letter. Fernandez's declaration states no employment contract existed between Erysthee and Tropical, and there are no other documents that guarantee Erysthee employment for a specified period of time or otherwise set forth the terms or conditions of his employment. *See* Defs.' Statement of Undisputed Facts Ex. 1, at 2, 3.

Arguing Tropical's motion for summary judgment is premature pursuant to Federal Rule of Civil Procedure 56(d), Erysthee requests that the Court deny the motion because the case is in its infancy and the parties have yet to engage in discovery. He submits an affirmation by his attorney, Kye Walker, which states that Erysthee seeks to discover his personnel file and other documents regarding his employment with Tropical, including those containing the terms and expectations of his employment. The affirmation explains that the documents would help the Court to determine the nature and details of the employment agreement between Tropical and Erysthee. Tropical counters that the discovery requests are far too generalized to satisfy Rule 56(d). Additionally, it argues that Attorney Walker has not complied with the formal requirements of Rule 56(d), which necessitate the filing of an affidavit or declaration as opposed to the affirmation Attorney Walker submitted.

The Court agrees with Erysthee that Tropical's summary judgment motion is premature. Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56. The Third Circuit has interpreted this rule and its precursor, Rule 56(f), to require that "a party seeking *further* discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d 136, 140–41 (3d Cir. 1988) (emphasis added). The Court notes the Third Circuit's use of the word "further," which underscores that some discovery has usually taken place when a motion for summary judgment has been filed. Given that Tropical's summary judgment motion was filed in response to Erysthee's Complaint, some discovery of Erysthee's employment documents is required for him to adequately respond to Tropical's summary judgment motion. *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (stating that a court is "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." (quoting *Dowling*, 855 F.2d at 139)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (noting that "[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under [Rule 56(d)], which allows a summary judgment motion to be denied . . . if the nonmoving party has not had an opportunity to make full discovery.").

As to Tropical's argument that Erysthee failed to follow the technical requirements of Rule 56(d), Erysthee's failure to support his request with an affidavit or declaration is not "automatically fatal to its consideration." *See St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994) (citation omitted). Erysthee has described the information he seeks, explained why these employment documents may create a genuine issue of material fact as to

whether an employment contract existed, and stated that he has not been able to obtain the information because it is in Tropical's possession. *See Mogyrossy v. Comfort Inn*, 173 F.R.D. 134, 137–38 (E.D. Pa. 1997) (granting relief under then-Rule 56(f) despite plaintiffs' failure to file an affidavit when plaintiffs identified what information was yet to be discovered, shown that the information would affect summary judgment, and shown why the information had not been previously obtained). He has therefore established, for the purposes of the present Rule 56(d) request, that his argument is in good faith and that summary judgment would be premature. *See Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511 (3d Cir. 1994) ("The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." (internal quotation marks and citation omitted)). Accordingly, Tropical's motion for summary judgment will be denied.

For the reasons set forth above, Erysthee's motion for leave to amend the complaint will be granted in full as to Counts I and II and in part as to Count IV of the original Complaint. Considering Tropical and Aubain's arguments for summary judgment and dismissal as to Erysthee's Amended Complaint, their motion will denied as to Counts I, II, and III and granted as to Counts IV and V.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.